**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SHERESE L. TIPPY                                                                          PLAINTIFF

v.                                             No. 4:14CV00691 JLH

HUMANA MARKETPOINT, INC.                                                    DEFENDANT

## OPINION AND ORDER

Sherese L. Tippy commenced this action against Humana MarketPOINT, Inc., Darin Davis, and Sarah Prisock, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. Tippy has amended the complaint twice. In the second amended complaint, Tippy withdrew all allegations against Prisock. Subsequently, Tippy failed to file proof of serving Davis as required by Rule 4 of the Federal Rules of Civil Procedure. Accordingly, Davis's motion to dismiss was granted, and the claims against Davis were dismissed without prejudice. The only remaining defendant, Humana, has filed a motion for summary judgment, to which Tippy has responded. For the following reasons, the motion for summary judgment is granted.

## I.

Tippy, an African-American, began working for Humana in July 2011 as a sales representative. Tippy sold Humana healthcare insurance products, such as Medicare Advantage plans, to individuals. Her sales region consisted mainly of Pulaski and Saline counties. In June 2013, Tippy's then-manager Grady Burlsworth commented by email regarding her performance in May 2013. Burlsworth noted "a great deal of positives" as well as areas Tippy could "improve on." With Humana's Medicare Advantage product, Tippy exceeded sales expectations, but with other

products, she fell short by more than half.[1]   Burlsworth made several suggestions to improve Tippy's other product sales before closing on a note of encouragement, saying, "I know that June will be a spectacular month for you."   On the second Monday in July 2013, Burlsworth emailed Tippy regarding her June performance.   He opened by acknowledging that "June was not the month that either of us wanted."   Tippy closed the month with four Medicare Advantage sales and two other product sales earning $1,078 in commission.   Burlsworth told Tippy that he wanted Tippy to make a goal of selling four Medicare Advantage products and four other products with at least $750 in commission by the end of the week.   The following Monday, Burlsworth emailed Tippy because he was concerned with her lack of other product sales for July.   Tippy had not met the goal Burlsworth had given her and continued to sit at zero other product sales.   Burlsworth noted that Tippy's sales history demonstrated that she was more than capable of reaching the sales and commission expectations.   Although Burlsworth assured Tippy that he had faith in her, he said that he needed to see significant improvement from her.

Toward the end of July 2013, Davis became Tippy's manager.   Tippy describes their relationship as tense from the beginning.   According to Tippy, when Davis first became her manager, he questioned why Humana considered her a productive employee because he did not think she was productive.   Near the end of October 2013, a sales representative in Texarkana was terminated. Davis asked Tippy to help Humana cover that region temporarily, and Tippy agreed.   Davis assigned her the former sales representative's leads in Texarkana, but Tippy was still responsible for her

---

[1] Each month, Humana expected its sales representatives to sell at least 10 Medicare Advantage products and a total of 14 other products earning $2,000 in commission.  In May, Tippy sold 13 Medicare Advantage products but only 6 other products and earned $624 in commission. Tippy testified that Humana prioritized Medicare Advantage product sales over other product sales by heavily grading its sales representatives on Medicare Advantage product sales.

normal region of Pulaski and Saline counties.  The additional assignment required Tippy to travel approximately 140 miles each way from Little Rock to Texarkana about two times each week.  Davis recommended that Tippy condense the Texarkana sales leads to a couple days a week and told her she could get a hotel room while in Texarkana.  Humana reimbursed Tippy for her mileage driving to Texarkana, but Humana would not reimburse her for any hotel expenses.  However, Tippy states that she does not attribute Humana's refusal to reimburse hotel expenses to her race.

In January 2014, Davis emailed Tippy recapping the annual election period—an open enrollment period where individuals may enroll in Medicare Advantage plans.  Davis noted that Tippy as well as nearly all Humana sales representatives fell short of Humana's goal for Medicare Supplement products.  Davis recognized that Tippy was "spread . . . a little thin" with the Texarkana assignment but wanted her to continue to focus on that area in 2014.  Davis also expressed concern that "quite a few" of Tippy's customers complained that they could not reach her.  In March 2014, Davis reached out to Tippy regarding her February sales.  Tippy did not reach any of the three goals that had been set for her.  Davis also sent an email to Tippy in March 2014 to address complaints made by some of Tippy's customers.  Davis emphasized the need to stay in touch with customers and return customer calls.

Beginning in May 2014, Tippy requested several accommodations in order to alleviate some of the burden from the additional obligations.  Tippy states that she agreed to the Texarkana assignment with the understanding that Davis would make adjustments to her outstanding job duties. Tippy requested that Davis excuse her every other Monday from the mandatory sales meeting held weekly in Little Rock.  Tippy thought this would be possible because three other sales representatives with regions outside of central Arkansas were only required to attend sales meetings

in Little Rock every other week.  Davis did not allow Tippy the same arrangement.  Tippy also requested that she be permitted to work from home every other Monday.  Davis also denied this accommodation.  Finally, Tippy asked Davis if she could have a reprieve from the expectation of completing five community based marketing events each month.  Tippy believed that one of her colleagues was permitted such an accommodation because, like her, he serviced a region outside central Arkansas. She told Davis that she would like the accommodation so that she might have sales numbers like her colleague.  Davis told Tippy that the same number of marketing events was expected of the colleague but that he was not disciplined because he otherwise met his sales goals each month.

Around the same time as these requests, Tippy communicated with Davis by email to express concern regarding unresolved issues complicating their work relationship.  Tippy told Davis that he seemed dismissive toward her in meetings, spoke to her unprofessionally when he raised his voice while sorting out a dispute between herself and another employee, and treated her coldly by requesting that another employee sit between them during a meeting.  On July 1, 2014, Davis intercepted a draft email that Tippy had inadvertently printed.  In the draft email, Tippy reiterated some of the same issues that she had mentioned in the previous email.  She also expressed frustration that Davis was not giving her the support that she was requesting to help her manage the Texarkana assignment.  After Davis read the email, Tippy says that he reacted very angrily and demanded that they meet.  Tippy felt that the meeting was very contentious and that she should take some time off.  On July 6, 2014, Tippy requested 120 hours of paid time off beginning July 7, which Davis approved.

4

While Tippy was on leave, several customers called Humana with complaints about Tippy. On July 16, an administrative services coordinator sent an email to Davis reporting that she had received three calls in the previous twenty-four hours with customer service complaints about a Humana sales representative. Two of the customers were from Texarkana and the other customer was from Nashville, which is near Texarkana. One customer from Texarkana and the customer from Nashville identified Tippy as the sales representative. Davis looked into the matter further and says that he called six of Tippy's customers. Davis states that all six customers reported that Tippy failed to show a required video in her sales presentation.[2] Davis was concerned over the lack of customer service, but he was particularly concerned with the noncompliant presentations. Humana, as a company selling Medicare Advantage products, is heavily regulated and under strict requirements when presenting its products to prospective customers. On July 24, Davis and his boss, Tommy Mays, met with Tippy to discuss the customer complaints and compliance issues. After the meeting, Davis emailed Tippy and told her that he would continue looking into the matter and that if he discovered a pattern of noncompliance, she could face disciplinary action up to and including termination. Davis asked Tippy to plan to meet with him on July 28 to discuss his findings.

On July 27, 2014, Tippy sent Davis a notice of resignation by email. After giving notice of her resignation, Tippy stated, "I would like to continue as an Independent agent with Humana." Davis responded that he thought her decision to resign was for the best and that Tippy was welcome to contract with Humana as an independent agent. Upon resigning, Tippy completed an exit interview in which she claimed that she had been treated differently than similarly situated white

---

[2] This evidence is admissible not as proof that Tippy failed to show the required video but as evidence of Davis's state of mind, i.e., that he was concerned about a lack of customer service. *Cf. Hardie v. Cotter and Co.*, 849 F.2d 1097, 1101 (8th Cir. 1988).

colleagues because of her race.  In a phone conversation with a Humana representative on July 31, Tippy expanded on her claims.

On August 15, 2014, Tippy emailed Mays inquiring about being processed as an independent contractor with Humana.  Mays responded by email on that same day, stating that Humana would not allow her to work with the company as an independent contractor because of her pattern of noncompliant sales presentations.  Tippy filed charges with the Equal Employment Opportunity Commission alleging that Humana discriminated against her on the basis of race and retaliated against her for protected activity.  The EEOC has declined to pursue Tippy's charges.  Having exhausted her administrative remedies, Tippy now brings this action against Humana.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be

drawn from the record.  *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).  If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law.  *Id.*  "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial."  *Torgerson*, 643 F.3d at 1043 (citations omitted).

## III.

Tippy alleges that Humana discriminated against her on the basis of her race when Davis refused to provide her with the accommodations she had requested.  In the usual case, race discrimination under Title VII and section 1981 are analyzed jointly.  *See MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1059-60 (8th Cir. 1988).  Tippy does not allege that there is direct evidence supporting her race-discrimination claim.  Accordingly, the Court analyzes her claim under the familiar *McDonnell Douglas* framework.  *See Roxas v. Presentation Coll.*, 90 F.3d 310, 315 (8th Cir. 1996) (noting that *McDonnell Douglas* applies to cases arising under both Title VII and section 1981).  Under *McDonnell Douglas*, Tippy must present a prima facie case of intentional discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973).  Tippy's burden at this stage "is not onerous."  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94, 67 L. Ed. 2d 207 (1981).  If Tippy makes out a prima facie case, the burden then shifts to Humana to articulate a legitimate, nondiscriminatory reason for the action it took.  *See McDonnell Douglas*, 411 U.S. at 802-03, 93 S. Ct. at 1824-25.  If Humana meets this "minimal" burden, Tippy must show that the

proffered reason is pretext for unlawful discrimination. *Id.* at 804, 93 S. Ct. at 1825; *Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014).

To establish a prima facie case of racial discrimination, Tippy must show that: (1) she was a member of a protected group; (2) she was meeting Humana's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees who are not members of her race were treated differently. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Humana disputes that Tippy can show that she suffered an adverse employment action or that other similarly situated employees of another race were treated differently.

An adverse employment action is a change in working conditions that produces a material employment disadvantage. *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015). Examples include termination, reduction in compensation, and changes that affect an employee's future career prospects. *Id.* On the other hand, inconveniences associated with a job reassignment, standing alone, are insufficient to demonstrate an adverse employment action. *Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005).

Humana argues that Tippy cannot show that she suffered an adverse employment action based on Davis denying her requested accommodations. According to Humana, the temporary assignment to Texarkana and its additional obligations amounted to mere inconveniences but not material changes in working conditions.

Tippy acknowledges that the Texarkana assignment itself is not an adverse employment action. Nevertheless, she contends that a reasonable juror could infer that Davis favored white employees over Tippy because similarly situated white employees were granted some of the same accommodations as those Tippy was denied.

8

The second amended complaint states that Tippy requested the accommodations "in order to have additional time to meet company expectations for servicing the Texarkana area." Document #5 at ¶ 15. Tippy seems to assume that the Texarkana assignment without the requested accommodations constitutes an adverse employment action, but there is no evidence that she suffered more than the normal inconveniences associated with a change in job duties. Tippy's additional obligations may have spread her a little thin, but the Eighth Circuit has not regarded increased job responsibilities "involving no corresponding reduction in salary, benefits, or prestige" as an adverse employment action. *Higgins v. Gonzales*, 481 F.3d 578, 585 (8th Cir. 2007) *abrogated on other grounds by Torgerson*, 643 F.3d 1031 (8th Cir. 2011) (en banc); *see also Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (holding that although secretary had been reassigned to a job that "was more stressful," the changes in duties and job responsibilities caused no materially significant disadvantage).

The second amended complaint alleges that Humana refused to reimburse Tippy's travel expenses in the same way that Humana reimbursed other employees' travel expenses. Tippy now concedes that the Texarkana assignment did not result in a reduction in salary, benefits, or prestige. Her rate of commission remained unchanged, and she was reimbursed mileage like other employees. Although she requested that Humana reimburse hotel expenses, she testified that Humana's refusal to do so was not based on her race. Additionally, Tippy does not argue that the denial of her requested accommodations caused some other adverse employment action. Without more, Davis's denials of Tippy's requested accommodations do not constitute an adverse employment action. Tippy has failed to make out a prima facie case of employment discrimination on the basis of race under Title VII and section 1981.

9

**IV.**

Tippy next alleges that she was constructively discharged.  She argues that Davis treated her in a racially discriminatory manner and made working at Humana intolerable.  To establish a constructive-discharge claim under Title VII, Tippy must show that (1) Humana deliberately created intolerable working conditions with the intention of forcing her to quit and (2) she gave Humana a reasonable opportunity to resolve the problem before resigning.  *See Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010).  Tippy must show that a reasonable person in her situation would find the working conditions intolerable—her subjective feelings are not considered. *Id.*

Tippy alleges that Davis made working at Humana intolerable by treating her with open contempt and disrespect.  Tippy specifically references Davis questioning why Humana considered her a productive employee, raising his voice at her while trying to resolve an employee dispute, treating her dismissively in meetings, and asking another employee to sit between them during an office meeting.  These allegations fail to show that Tippy's working conditions were intolerable.  The Eighth Circuit has described the burden on Tippy as "substantial" and a bar that is "quite high."  *See O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810-11 (8th Cir. 2008).  Title VII does not prescribe "a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (quotations and citations omitted).  Tippy's allegations show only that Davis may have treated her uncivilly, but she has not shown that her working conditions were so intolerable that a reasonable person would be compelled to resign.  *See Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1160 (8th Cir. 1999) *abrogated on other grounds by Torgerson*, 643 F.3d 1031 (8th Cir. 2011).

10

Furthermore, Tippy's argument that she was constructively discharged is inconsistent with her own testimony regarding the reason she resigned. Tippy did not testify that she resigned because of the rudeness with which Davis treated her. Rather, she testified that she resigned because she expected to be discharged and she believed that if she resigned before she was discharged she could contract with Humana as an independent agent and keep her book of business.

## V.

Tippy last alleges that Humana unlawfully retaliated against her by refusing to allow her to sell Humana products as an independent contractor. To establish a prima facie case of retaliation, Tippy must show the following: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *See Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006). Tippy must establish that her protected activity was a but-for cause of the alleged adverse action by Humana. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).

Tippy has failed to establish a prima facie case of retaliation, Humana argues, because Tippy cannot show that Humana's refusal to allow her to work as an independent contractor was the result of her engaging in protected activity. Tippy contends that Humana denied her the position because she complained about being subjected to racial discrimination in her exit interview and follow-up to that interview. Tippy asserts that Davis and Mays both told her that she could work for Humana as an independent contractor and only changed their tune after she made the racial-discrimination charges in the exit interview. The evidence shows that Davis responded to Tippy's resignation by telling her that her resignation was for the best and she was "welcome to still contract with Humana as an independent agent." After Tippy's resignation, she completed an exit interview in which she

11

claimed that she had been subject to racial discrimination while working for Humana.  A few days later, Tippy expanded on her claim to a Humana representative.  After the initial exit interview and the follow-up with the Humana representative, Mays informed Tippy that she would be unable to contract independently with Humana due to her noncompliance with Humana's sales presentation policies.

Mays has testified that he was unaware of Tippy's complaint of racial discrimination when he decided that Humana would not contract with her as an independent agent.  Tippy offers no evidence to show that he was aware that she had complained of racial discrimination, nor does she offer evidence that someone other than Mays made the decision.  Mays explained that Humana's decision was made after six of Tippy's customers disclosed that she presented noncompliant sales presentations.  Tippy has failed to present evidence of the necessary causal connection between the protected activity (complaining of racial discrimination) and the adverse employment action (refusing to contract with her as an independent agent).  She has not, therefore, made out a prima facie case of retaliation.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. Document #15.

IT IS SO ORDERED this 22nd day of September, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE